IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAN BLUNDELL,                          )
                                       )
          Plaintiff,         )
                                       )
v.                                     )   No. CIV-12-76-L
                                       )
CONOCOPHILLIPS COMPANY,                )
                                       )
          Defendant.         )

## O R D E R

On January 24, 2012, plaintiff filed this action seeking declaratory relief and damages for alleged violations of the Civil Rights Act of 1964, as amended. Plaintiff alleged she was the victim of a hostile work environment based on her gender and was retaliated against for complaining about the hostile work environment. This matter is before the court on defendant's motion for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). In addition, the plain language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts, taken in the light most favorable to plaintiff, establish that plaintiff began her employment with defendant in 2002. Plaintiff was hired as a flight attendant to work on defendant's shuttle aircraft, which transferred employees to and from Ponca City, Oklahoma, Bartlesville, Oklahoma and Houston, Texas. At each of the three locations, defendant maintained offices and hangars where employees in the aviation division, including plaintiff, would report for duty. Defendant also conducted aircraft maintenance at the hangars. Plaintiff had the title of Lead Flight Attendant from December 2002 until lead positions were eliminated in early 2006.

In October 2006, Randy Brooks joined defendant's Oklahoma operations as a pilot; and in December 2007,[1] Brooks became the direct supervisor of the pilots

---

[1] In his affidavit, Brooks states that he was promoted and became plaintiff's supervisor in October 2008. Exhibit 3 to Defendant's Motion for Summary Judgment and Brief in Support at ¶ 6 (Doc. No. 29) [hereinafter cited at "Defendant's Motion"]. Defendant's Undisputed Material Fact

and flight attendants. Exhibit 1 to Defendant's Motion at 38. Plaintiff claims that once Brooks became her supervisor, he "engaged in a pattern of harassment that included hostile and aggressive behavior." Plaintiff's Response at 2.

On October 17, 2008, plaintiff submitted a written complaint about Brooks' behavior to Kevin McGee in defendant's human resources department. Plaintiff indicated she wanted "to file a formal complaint against Randy Brooks for creating a hostile work environment at the Ponca City Aviation Facility." Exhibit 1 to Defendant's Motion at 103. She indicated she believed she and two other female flight attendants had been subjected to a hostile work environment "during the last nine months." Id. She gave five examples of "unprofessional and volatile"[2] behavior by Brooks. On February 13, 2008, Brooks "became hostile towards me when I asked for further understanding of recent drastic changes being made affecting our daily job duties as flight attendants. Mr. Brooks, in a very demeaning matter, shouted at me . . . . This shouting went on for nearly a minute." Id. The second incident occurred on August 26, 2008 when plaintiff was restocking the plane. Brooks approached plaintiff "in a contentious manner" and told her to go home, telling her that her being at the hangar was a distraction to other employees. Id. During a flight crew meeting on August 29, 2008, Brooks became angry with plaintiff

---

No. 9, however, reflects that Brooks became plaintiff's supervisor in December 2007. Defendant's Motion at 3. In her response, plaintiff admitted this fact. Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support at 5 (Doc. No. 50) [hereinafter cited as "Plaintiff's Response"].

[2]Exhibit 1 to Defendant's Motion at 103.

when she questioned his decision to suspend a project plaintiff had been working on for three months. According to plaintiff, Brooks "openly berated me in front of the entire flight crew." Id. at 104. After the meeting, Brooks met privately with plaintiff and made what she took to be a "direct threat to my job." Id. The fourth and fifth incidents occurred on October 15 and 16, 2008. During a flight attendant meeting on October 15, 2008, Brooks "directed antagonistic comments" to plaintiff and another flight attendant. Id. He reminded them that he would now be completing their performance reviews, which plaintiff perceived to be "both threatening and vindictive." Id. Finally, on October 16, 2008, Brooks once again confronted plaintiff; during this confrontation, plaintiff claims Brooks "threatened" her "not once but twice." Id.

On October 20, 2008, defendant's human resources department began investigating plaintiff's complaint. Kevin McGee interviewed six employees of the Oklahoma aviation group, including Brooks. Exhibit 2 to Defendant's Motion at ¶ 6. After speaking to the six individuals, the human resources department determined that plaintiff "had not been subjected to a hostile work environment or discrimination in violation of the EEO Policy." Id. at ¶ 7. Plaintiff disputes this finding and contends that from December 2007 until her termination in June 2010, Brooks continued to harass and retaliate against her.

On November 4, 2009, plaintiff was placed on a 90-day Performance Improvement Plan ("PIP") by Brooks. Exhibit 1 to Defendant's Motion at 106-07.

The PIP recited "this is to confirm that your performance, particularly as it relates to safety standards, required procedures, and performance, and following supervisor direction, has not been acceptable and requires an immediate and sustained improvement on your behalf in the performance of your job." Id. at 106.  The PIP listed a number of expectations, including that plaintiff should

> [r]efrain from being at the hangar or other work locations when you are not required to be on duty.  Complete post flight duties in an efficient manner and exit the building.  Unnecessary lingering creates distractions and work interruptions for other employees and does not allow you to satisfy the intended purpose of crew rest.

Id. at 107.  Plaintiff was notified that "[f]ailure to meet the expectations set forth in this 90-day plan may lead to additional disciplinary action up to and including termination of employment." Id.  On February 8, 2010, the PIP was extended for 60 days because the shuttle had been out of service for six weeks during the original 90-day term.  Id. at 110.  On April 5, 2010, Brooks informed plaintiff he was concluding the PIP, with the caveat that

> [t]he following deliverable from your PIP requires your continued focus and attention to ensure that you fully meet the expectations it expresses:
>
> • Refrain from being at the hangar or other work locations when you are not required to be on duty.  Complete post flight duties in an efficient manner and exit the building.  Unnecessary lingering creates distractions and work interruptions for other employees and does not allow you to satisfy the intended purpose of crew rest.

5

<u>Id.</u>  Plaintiff was cautioned that she had to "sustain the performance improvement you have achieved and continue to meet these performance expectations on an ongoing basis" or suffer consequences including termination from employment.  <u>Id.</u>

Approximately one month later, plaintiff purchased a motorcycle for her son. The bike was delivered by a co-worker to Hangar 8, where defendant's employees parked their cars.  While she was off duty, plaintiff drove the motorcycle from Hangar 8 to Hangar 5, where she tipped over and scraped her elbow and ankle.  Exhibit 1 to Plaintiff's Response at 246.  While defendant's Health, Safety and Environmental ("HS&E") group investigated the accident, plaintiff was suspended with pay.  The HS&E investigation disclosed that plaintiff's accident occurred while she was off duty and at defendant's work site.  On June 24, 2010, plaintiff was called by Steve Saflin, the new Chief Pilot, Brooks, and Karen Augustino, a human resources representative.  During the phone call, Saflin informed plaintiff that "they had lost their trust in me and that I was unwilling to do my job without constant supervision." <u>Id.</u> at 251.  Saflin then told plaintiff her employment with defendant was terminated. <u>Id.</u>  While Brooks was on the line, he did not participate in the conversation.  <u>Id.</u>

Plaintiff filed her initial charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 14, 2010.  Exhibit 1 to Defendant's Motion at 91.  The original charge alleged plaintiff had been the victim

of age discrimination and retaliation. On April 20, 2011,[3] plaintiff amended her EEOC charge to include a charge of gender discrimination. Id. at 94-97. After receiving her right-to-sue letter, plaintiff filed this action on January 24, 2012, seeking relief under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff did not seek any relief under the Age Discrimination in Employment Act. Although plaintiff sought damages under both a hostile work environment theory and retaliation, she has abandoned her hostile work environment claim. *See* Plaintiff's Response at 25. The court's analysis will, thus, focus only on the remaining retaliation claim.

Title VII of the Civil Rights Act makes it unlawful to retaliate against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter". 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must show that:

> (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between her opposition and the employer's adverse action.

Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by

---

[3] There is a dispute about when the amendment actually occurred. For purposes of ruling on defendant's motion, the court accepts plaintiff's version of the facts, that is, that she amended her EEOC charge on April 20, 2011 – 300 days after the date of her termination.

adverse action." Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  Plaintiff must also demonstrate a nexus between the person to whom she complained and the person who made the decision to terminate her.  If the decision-maker had no knowledge of the protected activity, an inference of retaliation is not in order.  *See* Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (no causal connection shown absent evidence the supervisor who made the termination decision was aware of protected activity).  If plaintiff establishes her prima facie case, the burden of production shifts to defendant to show a legitimate, non-retaliatory reason for the employment decision.  EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992).  If defendant meets its burden of production, the burden then shifts to plaintiff who must show that defendant's proffered reason was merely pretext for retaliation.  Plaintiff can establish pretext by demonstrating that either that a retaliatory motive more likely motivated defendant or that defendant's proffered reason is unworthy of credence.  Plaintiff can also carry her burden by producing direct evidence of retaliation.  *See* Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).

      The court concludes plaintiff has not presented sufficient evidence to establish a prima facie case of retaliation as a matter of law.  First, it is not at all clear that plaintiff engaged in protected activity. Title VII does not proscribe all retaliation, only such retaliation that is because an employee has protested discrimination on the basis of race, color, religion, national origin, or gender.  Petersen v. Utah Dep't of

Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002); 42 U.S.C. 2000e-2. Plaintiff claims she engaged in protected activity in December 2007 when she "opposed Brooks' advances by limiting her communications and [distancing herself] from Brooks while at work." Plaintiff's Response at 21.[4] There is, however, no evidence that plaintiff complained of Brooks' activities in 2007, and in fact, plaintiff's deposition testimony contradicts the arguments made in her brief.[5] When plaintiff did file a formal complaint on October 17, 2008, she did not mention Brooks' alleged sexual advances. The formal complaint, moreover, does not refer to gender discrimination at all; rather, it refers to Brooks' rude and aggressive behavior toward plaintiff. Exhibit 1 to Defendant's Motion at 103-04. Title VII, however, "does not prohibit all distasteful practices by employers." Petersen, 301 F.3d at 1188. Brooks "could be unconscionably rude and unfair"[6] to plaintiff without violating Title VII unless Brooks mistreated plaintiff *because* she is a woman. The formal complaint, however, does not make such an assertion. Nonetheless, because the complaint does mention that two other female flight attendants had likewise been subjected to a hostile work

---

[4]In support of her assertion that this is sufficient to constitute opposition to gender discrimination, plaintiff cites Tate v. Exec. Mgmt. Servs., Inc., 129 S. Ct. 1379 (2009) and proceeds to quote from the Court's alleged opinion on page 22 of her response. The cited case, however, constitutes the United States Supreme Court's denial of certiorari; it is not an opinion. The court could find no case that contained both quotes attributed by plaintiff to the Supreme Court on page 22 of her response.

[5]In her brief, plaintiff states that "[i]n December 2007, Plaintiff opposed his advances and distanced herself from Brooks." Plaintiff's Response at 8. In her deposition testimony, however, plaintiff states that in December 2007, Brooks "went from calling me and, you know, us being what I considered friends . . . to being evasive." Exhibit 1 to Defendant's Motion at 137.

[6]Petersen, 301 F.3d at 1188.

9

environment, the court will assume for purposes of ruling on this motion that plaintiff can meet the first prong of her prima facie case.

There is no dispute that plaintiff's termination constitutes an adverse action. The issue is whether there is a causal connection between plaintiff's complaints of gender discrimination and that action. The court concludes there is not. Plaintiff's latest complaint occurred in October 2008. Even if the court were to construe the PIP as an adverse action, that did not occur until more than a year after plaintiff submitted her formal complaint. This lapse of time is too long to establish the necessary causation by temporal proximity alone. *See* Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) (lapse of two to three months between protected activity and adverse action too long to establish causation). Even if there were temporal proximity, there is no evidence that Saflin, who made the decision to terminate plaintiff,[7] was aware of her prior complaint. As the Court of Appeals for the Tenth Circuit has noted, "the proximity between a specific . . . activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity." Hysten v. Burlington N. & Santa Fe Ry., 296 F.3d 1177, 1184 (10th Cir. 2002). Other than proximity, however, plaintiff provides no other evidence to establish the necessary

---

[7]Plaintiff claims Brooks made the decision to terminate her, but she admits that Saflin was the person who told her she was terminated and that Saflin was Brooks's supervisor and the Chief Pilot. Exhibit 1 to Plaintiff's Response at 251. Plaintiff has presented no evidence to controvert the affidavits of Augustino and Brooks that Saflin, rather than Brooks, made the decision to discharge plaintiff.

nexus. As plaintiff cannot establish the third element of her prima facie case, defendant is entitled to summary judgment on the retaliation claim.

In sum, Defendant's Motion for Summary Judgment (Doc. No. 29) is GRANTED. Judgment shall issue accordingly.

It is so ordered this 20th day of February, 2013.

_/s/ Tim Leonard_
TIM LEONARD
United States District Judge